In re WANER CORPORATION, Debtor.

Andrew J. MAXWELL,
Trustee, Plaintiff,

v.

PACESETTER STEEL SERVICES, INC.
a Georgia corporation, Defendant.

Bankruptcy No. 87 B 15541.
Adv. No. 87 A 1181.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 1, 1988.

Andrew J. Maxwell, Chicago, Ill., Trustee.

Erika Palmer Rogers, Oak Brook, Ill., for defendant.

MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON COMPLAINT TO AVOID ALLEGED PREFERENTIAL TRANSFERS

JACK B. SCHMETTERER,
Bankruptcy Judge.

Andrew J. Maxwell ("Trustee" or "Plaintiff") seeks to avoid and recover two alleged prepetition transfers as preferences, pursuant to 11 U.S.C. § 547(b). He has moved for Summary Judgment. Paceset-

ter Steel Service, Inc. ("Pacesetter") cross motioned for Summary Judgment.

This Court has core jurisdiction to enter final judgment under 28 U.S.C. § 157(b)(2)(F). For reasons stated below, Trustee's Motion for Summary Judgment is denied while Defendant's Cross Motion for Summary Judgment is granted. Defendant will recover judgment and costs entered by separate order this date.

## UNDISPUTED FACTS

On October 21, 1987, Waner Corporation ("Debtor") filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Andrew J. Maxwell ("Trustee") was appointed trustee.

Trustee filed the instant Adversary Complaint seeking to recover certain alleged preferential payments made to Pacesetter, a Georgia corporation authorized to do business in Illinois. Pacesetter filed its Answer and also its Response to Plaintiff's Request for Admission of Facts and Genuineness of Documents. In support of their cross motions for summary judgment, Trustee and Pacesetters each filed statements of uncontested fact in conformity with Local District Rule 12(e) which has been adopted as a Rule of the Bankruptcy Court. Neither party filed a Rule 12(f) statement contesting any of the asserted uncontested facts, so under Rule 12(e), (f) those facts stand admitted for purposes of this motion. No affidavits were filed under Rule 56 F.R.Civ.P.

From the admissions in pleadings and filings under Local Rule 12(e), the following facts are found to be undisputed:

On December 8, 1986, Pacesetter obtained a Judgment against Debtor in the State of Georgia in the amount of $14,379.20. An Application to Register this Judgment in Illinois was filed on March 4, 1987. Such Judgment was registered in the Circuit Court of Cook County, State of Illinois under the name *Pacesetter Steel Serv., Inc. v. Waner Corp.*, as case No. 87 L 4900.

Subsequent to the registration of the Georgia Judgment, a Citation to Discover Assets was issued out of the Illinois court on May 12, 1987, and returned showing service on June 6, 1987. Garnishment Summons was later issued from the Illinois Court on the registered judgment and was served upon Debtor's bank, the Heritage Bank of Oak Lawn, on July 3, 1987.

Payments from Debtor's estate to Pacesetter totalling $15,002.01 were made on the Judgment through the following checks:

| | |
|---|---:|
| Check No. 7659 (dated July 22, 1987) | $8,541.86 |
| Cashier's Check No. 103010 (dated August 1, 1987) | $6,460.15 |
| TOTAL | $15,002.01 |

The first check was drawn by Debtor on its account after both the citation and garnishment were served, and that check was paid by its bank on July 27, 1987.

The second check was paid to Defendant by the Heritage Bank after Judgment was entered against it in the garnishment proceeding on July 27, 1987. After receiving the garnishment judgment order, that Bank issued its Cashier's Check payable to Defendant dated August 1, 1987, and subsequently paid on August 13, 1987.

The moneys received by Pacesetter were for its benefit as a creditor; were for and on behalf of an antecedent debt owed by Debtor before the moneys were paid; were made while Debtor Waner Corporation was insolvent: and enabled Pacesetter to receive more than it would have received in bankruptcy in the related Chapter 7 proceeding, more than it was entitled to under bankruptcy laws, and more than if the payments had not been made.

There are no material disputed facts at issue herein. Both motions for Summary Judgment can be reached without resolving any material disputed fact.

### Summary Judgment Standards

Under Rule 56(c) F.R.Civ.P., summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987); *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987); *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 573 (7th Cir.1987); *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries*, 832 F.2d at 379; *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *Howland*, 833 F.2d at 642; *Marine Bank Nat'l Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *Valley Liquors*, 822 F.2d at 659; and *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987). Moreover, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Howland*, 833 F.2d at 642; *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987).

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *Barry Gilberg, Ltd. v. Craftex Corp.*, 665 F.Supp. 585, 589 (N.D. Ill.1987). The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Id.* at 251–252, 106 S.Ct. at 2511–12. In determining whether the evidence is sufficient, the Court must consider the substantive evidentiary standard that could be applicable at trials (whether preponderance of evidence, clear and convincing, or other). *Valley Liquors*, 822 F.2d at 659.

■ Of course, a party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any", which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553–54; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356–57; and *Howland*, 833 F.2d at 642. When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356–57. The Court should not "weigh the evidence." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511; *Valley Liquors*, 822 F.2d at 659. However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2511, *Valley Liquors*, 822 F.2d at 659.

*Cross Motions for Summary Judgment*

■ Although both parties argue for summary judgment, that does not by itself indicate that there are no genuine issues of material fact; the court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987) (Shadur, J.); *District 12, United Workers of Am. v. Peabody Coal, Co.*, 602 F.Supp. 240, 242 (S.D.Ill.1985). See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987). Cross-motions for summary judgment do not require the court to decide the case on those motions; the court can deny both motions if both parties have failed to meet the burden of establishing no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *ITT*, 674 F.Supp. at 1331; *Wolf v. Maryland Casualty*, 617 F.Supp. 456, 458 (S.D.Ill. 1985). See C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987).

## DISCUSSION

### *Avoidance under § 547(b)*

Section 547 of the Bankruptcy Code, 11 U.S.C., establishes requirements for avoiding preferential transfers. Under subsection (b), Trustee may avoid any transfer of property of the Debtor that is:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title. 11 U.S.C. § 547(b).

Section 101(50) of the Bankruptcy Code defines a "transfer" as:

"every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

11 U.S.C. § 101(50).

It is undisputed that elements required under § 547(b)(1), (2), (3) and (5) have been demonstrated by Plaintiff. The only dispute lies under § 547(b)(4)(A), commonly referred to as the "reachback" period. That issue is whether there was a "transfer" of Debtor's property to Pacesetter on or within 90 days before the filing of the Chapter 7 petition.

The parties agree that the 90–day "reachback" period began July 23, 1987. Both checks were paid after that date. However, Pacesetter argues that Debtor's assets were "transferred" within the meaning of § 547 when the Citation to Discover Assets was issued on May 12, 1987, or at least when it was served on June 6, 1987. It contends that upon issuance, and certainly upon service, a citation under Illinois law creates a lien on all of debtor's assets real and personal. It also suggests that a further lien was imposed on Debtor's bank accounts when the Garnishment Summons was served on Debtor's bank on July 3, 1987. Those dates precede the July 23, 1987, preference "reachback" date. Defendant argues that the liens that preceded that date transferred to it all of Debtor's property rights in the moneys ultimately paid, so that later drawn checks merely transferred Pacesetter's property to it. Trustee contends that the transfer under § 547(b) occurred on the dates the Debtor's bank honored the two checks, that is on

July 27, 1987, and August 13, 1987, respectively.

### 1. *"Transfer" took place when the citation summons was served.*

■ Illinois statutes do not themselves specify that a lien arises upon service of citation summons following judgment. Authority on that question is found in reported decisions. In *General Tel. Co. of Ill. v. Robinson*, 545 F.Supp. 788, 797 (C.D.Ill. 1982), the court opined that Illinois reported authority is unclear and in conflict on this question. However, the judges of this Bankruptcy Court have uniformly found after detailed surveys of Illinois authority that a citation proceeding does create a lien on discovered property of a judgment debtor and compels the assets discovered to be used toward satisfaction of a judgment. *In re Gus Hormovitis and George Karahalios*, 57 B.R. 471, 475 (Bankr.N.D.Ill. 1985) (Schwartz, J.); *In re Einoder*, 55 B.R. 319, 324 (Bankr.N.D.Ill.1985) (Ginsberg, J.); *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill.1984) (Hertz, J.); *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D.Ill. 1983) (Fisher, J.); *In re Johnson*, 24 B.R. 751 (Bankr.N.D.Ill.1982) (Eisen, J.); *In the Matter of Stoner Invs., Inc.*, 7 B.R. 240 (Bankr.N.D.Ill.1980) (Eisen, J.).

In *Foluke* and *Einoder* Judges Hertz and Ginsberg also dealt directly with the question whether the lien created by citation effected a "transfer" of the interest to which lien attached within the meaning of 11 U.S.C. § 547. They held that imposition of the citation lien is a "transfer" for preference purposes, with authoritative citations to Illinois and Bankruptcy authority. *See, Einoder*, 55 B.R. at 324-5 (J. Ginsberg). *Accord, In re Momentum Computer Sys. Int'l*, 66 B.R. 512 (N.D.Cal.1986) (where levy and execution preceded 90–day period, and payment was within the 90–day period). The decision of Judge Ginsberg in *Matter of Almarc*, 52 B.R. 582 (N.D.Ill. 1985) on which Trustee relies dealt with preference issues only involving payments by check, and did not involve any earlier citation or garnishment outside the 90–day period.

This Court follows the reasoning of Judge Ginsberg in *Einoder* and the other cited cases. Accordingly, Pacesetter obtained a citation lien on, and thereby received "transfer" of all interest in the moneys and accounts of Debtor involved here, all before the 90–day period under § 547(b)(4)(A).

### 2. *"Transfer" also took place when garnishment summons was served.*

■ The garnishment summons was also served on the bank before the 90–day period. Under Illinois law, the judgment became a continuing lien against the accounts of Debtor then held by that bank when that summons was served, and also against any property by Debtor received by the Bank during the garnishment proceeding. *Ill. Rev.Stats.* ch. 110 para. 12–707.

The facts in *Riddervold v. Saratoga Hosp.*, 647 F.2d 342 (2d Cir.1981) (Friendly, J.) were similar to the facts here: After judgment, a wage garnishment summons ("income execution" under New York law) was served outside the 90–day preference period, but the payment by garnishee pursuant thereto was made within the 90–day period. Applying New York law which is similar to that of Illinois, the court held because of the continuing garnishment lien that the debtor had no property interest in the wages ultimately paid after the garnishment process was served. Therefore the later payment was not a "transfer" of debtors property under § 547. *Id.* at 346.

*Riddervold* has been severely criticized, Weisberg, *Commercial Morality, the Merchant Character, and the History of Voidable Preference*, 39 Stan.L.Rev. 3, 92 (1986). However, when faced with the same issue under Indiana garnishment law, the Seventh Circuit found that a garnishee is accountable to the judgment creditor from the moment process is served. *In re Coppie*, 728 F.2d 951 (7th Cir.1984), *cert. denied sub nom.*, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985). Indiana law, like that of Illinois, provides for a continuing lien on garnished property. The court in *Coppie* therefore held under facts sim-

ilar here that the garnishment outside the 90–day period was not a preference under § 547. *Coppie* involved debtor's wages not due when the garnishment summons was served. When they were later paid within the 90–day period, debtor was not entitled to the portion garnisheed. So there was no "transfer" of that part of debtor's property at that time. The same rule certainly applies to property that, as in this case, belonged to debtor and was in its bank accounts when the garnishment (and citation) process were served. 11 U.S.C. § 547(e)(3) and *Coppie*, 728 F.2d at 953.

Similar decisions under the laws of different states have come to the same conclusion. *In re Conner*, 733 F.2d 1560 (11th Cir.1984) (Georgia); *In re Ryder*, 59 B.R. 868 (Bankr.S.D.Fla.1985) (Florida); *In re Yamamoto*, 21 B.R. 58 (Bankr.D.Haw. 1982) (Hawaii); *In re TMIC Indus. Cleaning*, 19 B.R. 397 (Bankr.W.D.Mo.1982) (Missouri); and *In re Woodman*, 8 B.R. 686 (Bankr.W.D.Wis.1981) (Wisconsin). *Contra In re Larson*, 21 B.R. 264, 271 (Bankr. D.Utah 1982) (Utah).

So the second check paid to Pacesetter paid over moneys earlier subject to the garnishment lien as well as the citation lien. That check was merely a transfer of Pacesetter's money to it when paid, not a transfer of Debtor's property.

## CONCLUSION

Once the citation and garnishment liens attached under Illinois law, a "transfer" occurred within the meaning of § 547, transferring Debtor's property interest in its accounts and discovered moneys to Pacesetter. That occurred prior to and outside the 90–day period. When Pacesetter actually received payments of those accounts and moneys during the 90–day period, it was merely receiving its own money, not a transfer from Debtor's property.

Trustee therefore has failed to establish one of the elements required under § 547, and his suit must fail. By separate order, summary judgment will be allowed to Defendant, not to Plaintiff, and final judgment will enter in favor of Defendant.

Because of the reasoning hereinabove, there is no need to reach the other issues briefed by the parties pertinent to their argument as to when a "transfer" under § 547 takes place by checks that transfer a debtor's property. That analysis is not relevant here because the checks in this case did not transfer Debtor's property.