**In re Alan J. & Karen M. LIFCHITZ, Debtor.**

**Ronald R. PETERSON, Trustee, Plaintiff,**

v.

**CHAS. BENDER CO., Defendant.**

**Bankruptcy No. 90 B 7429. Adv. No. 91 A 00053.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 17, 1991.

---

Jason W. Bruce, Jenner & Block, Chicago, Ill., for plaintiff trustee.

Joseph I. Adler, Charles E. Adler, Adler & Adler, Chicago, Ill., for defendant Chas. Bender Co.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter comes before the Court on the motion of Ronald R. Peterson (the "Trustee") as Chapter 7 Trustee of the estate of Alan and Karen Lifchitz (collectively, the "Debtors"), for summary judgment pursuant to Rule 56 Fed.R.Civ.P. and Bankruptcy Rule 7056. Pursuant to 11 U.S.C. § 547(b), Trustee seeks to avoid as a preference certain judgment liens which were recorded in favor of Chas. Bender Co. ("Bender") against the Debtors and Kay Cee Muffins, Inc. ("Kay Cee"). He has moved for summary judgment. For reasons stated below, that motion will be allowed.

### UNDISPUTED FACTS [1]

#### Introduction

Kay Cee is an Illinois Corporation which operated as a restaurant between Septem-

---

1. Plaintiff filed a detailed Statement of Uncon- tested Facts pursuant to Local District Rule

ber 1988 and January 1990. At all relevant times, Debtors owned 80 percent of Kay Cee's corporate stock. Bender is an Illinois commercial building contractor engaged in the business of building and furnishing fixtures to restaurants.

Debtors own a residence at 2751 Greenwood Road, Northbrook, Illinois, which is located in Cook County. At the time the Citation was served, Debtors also had, and continue to have, interests in Individual Retirement Accounts (the "IRAs") and a profit-sharing trust (the "Trust").[2]

On or about September 21, 1988, Kay Cee executed an Installment Note (the "Note") in favor of Bender in the principal amount of $119,100.00, under which Kay Cee agreed to pay Bender sixty equal monthly installments of $1,985.00 commencing on January 1, 1989. On the same date, Kay Cee secured its obligations to Bender by executing a Security Agreement (the "Security Agreement") which granted Bender a security interest in Kay Cee's shop fixtures and equipment. Debtors executed a personal guaranty (the "Guaranty") to secure Kay Cee's obligations under the Note and the Security Agreement.

Kay Cee subsequently defaulted on its obligations under the Note, and Debtors failed to pay the amounts due and owing under the Guaranty. Consequently, on January 22, 1990 Bender filed a complaint in the Circuit Court of Cook County, Illinois seeking judgment in the amount of $118,-107.50 against Kay Cee and the Debtors (the "state court action"). On January 25, 1990, the state court entered a Confession of Judgment in the amount of $112,405.00 against Kay Cee and the Debtors.

On January 26, 1990, Bender recorded two memoranda of judgment with the Cook County Recorder of Deeds. The first memorandum is in the amount of $118,107.50

and the second is in the amount of $112,-405.00.[3] On or after March 21, 1990, Bender also served a Citation to Discover Assets on the Debtors (the "Citation").

On April 23, 1990, Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Bender has filed an Amended Proof of Claim in the amount of $112,405.00, the amount awarded in the state court action. On January 15, 1991, the Trustee initiated this Adversary proceeding to avoid judicial liens which were purportedly created by the recordation of the state court judgment and the service of the Citation (the "Citation lien"), as preferential transfers under 11 U.S.C. § 547(b). The Trustee also moved to disallow Bender's Proof of Claim under 11 U.S.C. § 502(b).

## FACTS DEEMED ADMITTED

### Parties

1. Ronald R. Peterson, the Plaintiff in this action, is the duly appointed, acting, and qualified Chapter 7 Trustee of the Debtors. Complaint, ¶ 2; Answer, ¶ 2.

2. Chas. Bender Co. ("Bender"), the Defendant in this action, is an Illinois business owned by Benjamin Neuberg, with its principal place of business in Northbrook, Illinois. On August 13, 1990, Chas. Bender Co. filed a proof of claim in the amount of $118,107.50 (the "Proof of Claim"). Complaint, ¶ 3; Answer, ¶ 3.

3. The Debtors are individuals who reside in Northbrook, Illinois. On April 23, 1990 (the "Petition Date"), the Debtors filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. Complaint, ¶ 4; Answer, ¶ 4.

---

12(*l*) which was adopted by the District Court as a Rule of this Court. Defendants Response thereto did not comply with District Rule 12(m). Therefore Plaintiff's Statement stands admitted.

**2.** Debtors have claimed exemptions for the Trust and the IRA's pursuant to Ill.Rev.Stat. ch. 110, ¶ 12–1006. Trustee has filed objections to the claimed exemptions, contending that the Employment Retirement Income Security Act of

1974 ("ERISA") preempts Ill.Rev.Stat. ch. 110, ¶ 12–1006. The Objections are now pending before the Court, and have not been fully briefed or ruled on as of this date.

**3.** Only the second memorandum of judgment is relevant to this proceeding since it refers to the correct amount of the judgment ($112,405.00) awarded by the state court.

4. Kay Cee Muffins, Inc. is an Illinois corporation. Kay Cee Muffins, Inc. operated as a restaurant between September, 1988 and January, 1990. At all times discussed herein, the Debtors owned 80% of the corporate stock of Kay Cee Muffins, Inc. Complaint, ¶ 5; Answer, ¶ 5.

*Loan Documents*

5. On or about September 21, 1988, Kay Cee Muffins, Inc. executed an Installment Note in favor of Bender in the principal amount of $199,100.00 (the "Note"). A true and correct copy of the Note is attached as Exhibit A to the Complaint, with the exception that Exhibit "A" to the Complaint does not include a copy of the personal Guaranty on the reverse side of the Note. Complaint, ¶ 6; Answer, ¶ 6.

6. Under the Note, Kay Cee Muffins, Inc. agreed to pay Bender $119,100.00 in sixty consecutive equal monthly installments of $1,985.00. The Note required Kay Cee Muffins, Inc. to make its first monthly payment on January 1, 1989. Complaint, ¶ 7; Answer, ¶ 7.

7. To secure its obligations to Bender under the Note, Kay Cee Muffins, Inc. executed a Security Agreement dated September 21, 1988 (the "Security Agreement"). Complaint, ¶ 8; Answer, ¶ 8.

8. Pursuant to the Security Agreement, Kay Cee Muffins, Inc. granted Bender a security interest in the shop fixtures and equipment of Kay Cee Muffins, Inc. A true and correct copy of the Security Agreement is attached as Exhibit B to the complaint. Complaint, ¶ 9; Answer, ¶ 9.

9. To secure the obligations of Kay Cee Muffins, Inc. to Bender under the Note and the Security Agreement, the Debtors executed a Personal Guaranty (the "Guaranty"). A true and correct copy of the Guaranty is attached as Exhibit C to the complaint. Complaint, ¶ 10; Answer, ¶ 10.

*Default*

10. Thereafter, Kay Cee Muffins, Inc. failed to pay all amounts due and owing under the Note and the Security Agreement and the Debtors failed to pay all amounts due and owing under the Guaranty. Complaint, ¶ 11; Answer, ¶ 11.

11. As a result, on January 22, 1990, Bender filed a complaint against Kay Cee Muffins, Inc. and the Debtors in the Circuit Court of Cook County, Illinois, County Department, Law Division (the "Circuit Court"), Case No. 90 L 1074, seeking judgment in the amount of $118,107.50 on the Note, the Security Agreement, and the Guaranty. Complaint, ¶ 12; Answer, ¶ 12.

12. On January 25, 1990, the Circuit Court entered a Confession of Judgment in favor of Bender and against Kay Cee Muffins, Inc. and the Debtors in the amount of $118,107.50. Complaint, ¶ 13; Answer, ¶ 13.

13. Bender (a) recorded with the Cook County Recorder of Deeds as Document No. 90043326 on January 26, 1990, a memorandum of judgment in the amount of $118,107.50, (b) recorded with the Cook County Recorder of Deeds as Document No. 90043252 on January 26, 1990, a memorandum of judgment in the amount of $112,405.00, and (c) served a citation to discover assets on the Debtors on or after March 21, 1990 (collectively, the "Enforcement Documents"). Copies of the Enforcement Documents are attached as Group Exhibit D to the complaint. Complaint, ¶ 14 and Group Exhibit D thereto; Answer, ¶ 14.

*Avoidance of Preferential Transfer*

14. The Enforcement Documents were transfers of an interest of the Debtors in property to or for the benefit of Bender (collectively, the "Preferential Transfers"). Complaint, ¶ 15; Answer, ¶ 15.

15. The Preferential Transfers were transfers for or on account of an antecedent debt owed by the Debtors before such transfers were made. Complaint, ¶ 16; Answer, ¶ 16.

16. The Preferential Transfers were made while the Debtors were insolvent. 11 U.S.C. § 547(f); Affidavits of Alan J. Lifchitz and Karen M. Lifchitz.

17. The Preferential Transfers were made on or within 90 days before the Petition Date. Complaint, ¶ 18; Answer, ¶ 18.

18. The Preferential Transfers would enable Bender to receive more than Bender would have received had those transfers not been made and Bender had received payment on its alleged claim to the extent provided by Title 11. 11 U.S.C. §§ 725, 722, 554, 353(f), and 362(d); Schedules A–2, B–1, B–2, and B–3 of the Debtors' Bankruptcy Petition; and Trustee's Objection to Claimed Amended Exemptions.

## DISCUSSION

### Jurisdiction

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334(a). Because this proceeding seeks to avoid a preferential transfer, this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

### Summary Judgment Standards

Under Rule 56(c) F.R.Civ.P. (Bankr.Rule 7056), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita*,

475 U.S. at 586, 106 S.Ct. at 1355. However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12. In determining whether the evidence is sufficient, the Court must consider the substantive evidentiary standard that would be applicable at trial (whether preponderance of evidence, clear and convincing, or other). *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Of course, a party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any", which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, his response must demonstrate specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct.

at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

The Court should not "weigh the evidence." However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510–11, *Valley Liquors*, 822 F.2d at 659.

When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### Requirements under § 547

Section 547 of the Bankruptcy Code establishes the requirements for avoiding preferential transfers. 11 U.S.C. § 547. Under subsection (b), a trustee may avoid any transfer of the debtor that was made (1) for the benefit of a creditor; (2) on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days before the filing of the petition (a year when insiders are transferees); (5) where such transfer allowed the creditor to receive a greater percentage of the debtor's estate than it would have received had the transfer not taken place and had the debtor's assets been liquidated and distributed in a Chapter 7 case. 11 U.S.C. § 547(b).

The first, second, and fourth elements of Section 547(b) are not contested here. With respect to Trustee's allegations regarding the third and fifth elements, Bender merely pleads in its Answer to the Complaint and the instant Motion that it "neither admits nor denies the allegations contained therein but demands strict proof thereof." The insufficiency of Bender's pleading is discussed later. However, before the Court reaches the other elements of Section 547(b), the Court must first determine whether a "transfer" actually took place within the meaning of Section 547(b). Trustee contends that both the recordation of the judgment and the service of the Citation created a transfer of an interest of

Debtors in property to or for the benefit of Bender.

A "transfer" within the meaning of the Code is defined as

every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or which an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. 11 U.S.C. § 101(50).

This definition of "transfer" has been held to include any judicial proceeding that fixes a lien upon property of the debtor. *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill. 1984). Because bankruptcy courts look to state law in determining property rights, the question of whether Bender's liens were created by the recordation of the judgment and the service of a citation to discover assets is resolved by reference to Illinois law. *See In re Skelly*, 38 B.R. 1000, 1001 (Bankr.D.Del.1984).

### Recordation of Judgment

■ Ill.Rev.Stat. ch. 110, ¶ 12–101 provides that the recordation of a judgment creates a lien on all real property owned by the judgment debtor in the county in which the judgment is recorded. It is undisputed that Debtors own a residence at 2751 Greenwood Road, Northbrook, Illinois, which is located in Cook County. Thus, a "transfer" of an interest in Debtor's real property took place within the meaning of Section 547(b) when and at the times Bender recorded his two memoranda of judgment with the Cook County Recorder of Deeds.

### Citation

A lien which arises as a result of a citation to discover assets is a judicial lien on all personal property of the judgment debtor which is held by the recipient of the citation. Ill.Rev.Stat. ch. 110, ¶ 2–1402. It is undisputed that Debtors here had interests in certain IRA's and a profit-sharing trust at the time the Citation was served. Whether such personal property now may be claimed as exempt property has not yet been decided by the Court. That issue

need not be reached for purposes of deciding the present Motion.

■ The Illinois statute governing citation proceedings, however, does not specify whether or not a lien arises upon service of citation summons following judgment or upon entry of an order for turnover of property. *See* Ill.Rev.Stat. ch. 110, ¶ 2–1402. That legislative silence has resulted into an area of state law correctly described as being "muddled." *General Telephone Co. of Ill. v. Robinson,* 545 F.Supp. 788, 797 (C.D.Ill.1982). However, it appears that the weight of authority in the Illinois courts holds that a lien does in fact arise on intangible property by service of citation summons. *See Mid–West Natl. Bank v. Metcoff,* 23 Ill.App.3d 607, 319 N.E.2d 336 (1974); *Bank of Broadway v. Goldblatt,* 103 Ill.App.2d 243, 243 N.E.2d 501 (1968); *General Telephone Co. of Illinois v. Robinson,* 545 F.Supp. 788 (C.D.Ill. 1982); *Asher v. United States,* 570 F.2d 682 (7th Cir.1978).

The bankruptcy judges in this district, including this Court, have almost uniformly ruled that the clear weight of Illinois authority finds service of citation summons to create a lien while it also compels the discovered assets to be used toward satisfaction of the judgment. *In re TM Sweeney & Sons,* 120 B.R. 101, 105 (Bankr.N.D.Ill. 1990) (Schmetterer, J.); *In re Waner,* 89 B.R. 751, 755 (Bankr.N.D.Ill.1988) (Schmetterer, J.); *In re Fowler,* 90 B.R. 375, 377 (Bankr.N.D.Ill.1988) (Coar, J.); *In re Einoder,* 55 B.R. 319, 325 (Bankr.N.D.Ill.1985) (Ginsberg, J.); *In re Gus Hormovitis and George Karahalios,* 57 B.R. 471, 475 (Bankr.N.D.Ill.1985) (Schwartz, J.); *In re Foluke,* 38 B.R. 298, 300 (Bankr.N.D.Ill. 1984) (Hertz, J.); *In re Lapiana,* 31 B.R. 738, 742 (Bankr.N.D.Ill.1983) (Fisher, J.), *aff'd on other grounds,* 909 F.2d 221 (7th Cir.1990); *In re Coan,* 96 B.R. 828, 830 (Bankr.N.D.Ill.1989) (Sonderby, J.).

The one exception to the above line of bankruptcy court decisions cases is *In re Jaffe,* 111 B.R. 701, 704 (Bankr.N.D.Ill. 1990) (Barliant, J.). In *Jaffe,* Judge Barliant found that service of citation summons does not create a lien on a debtor's bank account until a turnover order is entered by the state court requiring transfer of the discovered assets. The reasoning in *Jaffe* also has been followed by District Judge Aspen in *Water Technologies Corp. v. Calco, Ltd.,* 132 F.R.D. 670 (N.D.Ill.1990). In *Water Technologies,* the court found the reasoning in *Jaffe* to be "the most convincing authority on the matter," and concluded that service of a citation does not create a lien. *Id.* at 677 ("[service of a citation] merely served to discover, not attach, th[e] asset").

Despite *Water Technologies,* this Court finds that the *Jaffe* decision, scholarly though it is, reaches a conclusion contrary to the clear weight of Illinois precedent which all other bankruptcy courts in this district have followed. As this Court discussed in an earlier decision, *In re T.M. Sweeney & Sons,* 120 B.R. at 105, the decision in *Jaffe* that a lien is not created in a citation proceeding until a turnover order is entered rested on only one Illinois decision. *See Jaffe,* 111 B.R. at 706, citing *Kaiser–Ducett Corp. v. Chicago–Joliet Livestock Mkting. Ctr., Inc.,* 86 Ill.App.3d 216, 41 Ill.Dec. 651, 407 N.E.2d 1149 (3rd Dist.1980). Thus, the *Jaffe* court went against the weight of established state law precedent. As the opinions in *Jaffe* and *Water Technologies* observed, it is for the Illinois legislature, and not the bankruptcy court, to determine how judicial liens are created. Accordingly, as it did previously in *Waner* and *Sweeney,* this Court is bound to follow the weight of state court authority.

Thus, this Court finds that the service of the Citation on March 21, 1990 created under Illinois law a citation lien on Debtors' intangible assets.

■ However, in *Sweeney,* this Court ultimately found that for purposes of § 547, the *time* of transfer of an interest is fixed by § 547(e)(2), which provides that "a transfer is made ... at the time such transfer is perfected...." *See* 11 U.S.C. § 547(e)(2)(B). Perfection is a concept under bankruptcy law that is not an element required for a citation lien under Illinois law. "Perfection" under § 547(e)(2)(B) is a

concept under which a creditor's rights become fixed and unalienable as against the lien rights of other competing creditors. Under Illinois law, the citation lien that attaches when citation summons is served remains subject to attack and modification until the property is ordered to be turned over. Therefore a "transfer" under federal bankruptcy law takes place as of entry of a turnover order, pursuant to § 547(e)(2)(B). There was no turnover order entered here, and therefore perfection of the citation lien never took place. Accordingly, under § 547(e)(2)(C), no "transfer" took place by reason of mere service of the citation and creation of a lien under Illinois law before the date of the filing of the bankruptcy petition.

### *Other Elements under Section 547(b)*

■ Bender asserts that it lacks information sufficient to form a belief as to the truth of Trustee's allegations of Debtor's insolvency and Trustee's allegation that Bender's liens would enable it to receive more than it otherwise would have received had it not obtained the liens. Bender neither admits nor denies these allegations, but merely "demands strict proof" thereof. Such reply, however, fails to establish that a genuine issue of material fact exists with respect to the third and fifth elements under Section 547(b).

Although Trustee has filed a detailed Statement of Material Facts as required by local Bankruptcy Rule 12(e), Bender failed to submit a statement of material facts as to which there is a genuine issue as required by local Bankruptcy Rule 12(m).[4] Pursuant to Rule 12(m), because Bender

has failed to submit said statement denying the facts set forth in Trustee's Statement, "[a]ll material facts set forth [in Trustee's Statement] will be deemed to be admitted...." Local Bankruptcy Rule 12(m). Trustee's well-pleaded allegation of Debtors' insolvency was supported by the affidavits of each Debtor (the "Affidavits"), and other documents. Trustee's showing that the liens caused Bender to receive more than he would have received had the liens not been created, are deemed admitted and uncontested.[5]

■ Section 547(f) provides that a debtor is presumed to have been insolvent on and during the 90 days immediately preceding the filing of the petition. 11 U.S.C. § 547(f). This presumption of insolvency is not conclusive and may be rebutted by evidence presented by the transferee. *In re Demetralis*, 57 B.R. 278, 281 (Bankr. N.D.Ill.1986). However, Bender has failed to present any evidence which either overcomes the statutory presumption of insolvency or disputes the facts contained in the Affidavits.

Indeed, it is well-established that more than a mere denial is required to overcome the presumption of insolvency. *In re Demetralis*, 57 B.R. 278, 281 (Bankr.N.D.Ill. 1986) ( ... "a bare allegation of the debtor's solvency at the time of the transactions ... does not constitute evidence to rebut the presumption of insolvency.") Similarly, in *Stoecker v. Buckner*, 1990 WL 129433, 1990 Bankr.Lexis 1934 (Bankr. N.D.Ill.1990), the court found that a transferee who neither admitted nor denied a debtor's insolvency, had "failed to come forward with any evidence to rebut the

---

**4.** General Rule 12(m) reads:

(m) Motions for summary judgment; opposing party. Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise "statement of genuine issues" setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, including with that statement references to the affidavits, parts of the record and other supporting materials relied upon to support such statement. All material facts set forth in the statement required to be served by the moving

party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**5.** With respect to the fifth element under Section 547(b), Trustee contends that because Bender's liens would allow it to recover on its debt from Debtors' interests in the trust, the IRA's, and real property, Bender's recovery pursuant to the liens would exceed that of general unsecured creditors. In the absence of any factual dispute, the Court finds no basis to disagree with Trustee's conclusion and inference flowing from the unrebutted facts.

presumption," and hence there was no material issue of fact with regard to the fourth element under Section 547(b). Here, the Affidavits buttress and amplify the statutory presumption. Accordingly, this Court finds that Bender's assertions fail to raise any genuine issue of material fact regarding Debtors' insolvency at the time of the transfer here.

## Conclusion

Trustee has established all elements necessary to avoid the judgment liens as preferences, and the Court also finds from this record that the citation lien under Illinois law never was perfected as a "transfer" under § 547(b). There is no triable issue of fact and the Trustee is entitled to summary judgment as a matter of law. To the extent if any that Bender's Proof of Claim in the amount of $112,405.00 rests upon the avoided liens, it may be open to question under Section 502(d) of the Bankruptcy Code, which provides that "the court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547 ... of this title...." 11 U.S.C. § 502(d). However, ruling on that issue will await final briefing thereon by the parties.

Accordingly, by separate order Trustee's Motion for Summary Judgment is granted.