**In re Herman Joseph MARINO, Debtor.**

**Herman Joseph MARINO, Plaintiff,**

**v.**

**CHRYSLER CREDIT CORP., Defendant.**

**Bankruptcy No. 95 B 22465.**
**Adversary No. 96 A 00272.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 8, 1996.

Gregory K. Stern, Chicago, IL, for Plaintiff–Debtor.

Maurice J. McCarthy, Jessica Tovrov, Querry & Harrow, Chicago, IL, for Defendant Chrysler Credit Corp.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to bankruptcy case No. 95 B 22465 filed by Herman Joseph Marino ("Marino" or "Debtor") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. Debtor filed this three-count Adversary Complaint against Chrysler Credit Corporation ("CCC") to determine the extent of CCC's Lien or Interest in certain property of Debtor. CCC is a judgment creditor of Marino pursuant to a corrected judgment and order of the District Court for the Northern District of Illinois in *Chrysler Credit Corp. v. Herman J. Marino,* Case No. 94 C 309, 1994 WL 478606. After entry of that judgment, CCC started citation proceedings and obtained a turnover order pertaining to certain property. It asserts a security interest in that property based on the citation proceedings.

In Count I, Marino pleads that claim number 00001 and claim number 00013 are dupli-cative in that each reflect CCC's secured claim asserted to be based upon the citation lien and turnover order. It prays that claim number 00013 be stricken. In Count II, Marino alleges that the Citation to Discover Assets was never properly served or, in the alternative, that any lien created by proper service was automatically terminated by operation of Illinois law. Marino seeks judgment determining the validity, priority, and extent of CCC's lien and disallowing CCC's secured claim number 00001. In Count III, Marino claims that a turnover order entered in the District Court proceeding affected an avoidable transfer of an interest in property pursuant to 11 U.S.C. § 547, and prays for judgment avoiding the transfer and disallowing CCC's claim number 00001.

Marino moved for summary judgment as to all counts of his Adversary Complaint. CCC filed its Cross–Motion for Summary Judgment as to all counts of the Complaint.

For reasons stated herein and by separate order, partial summary judgment will be granted in favor of Marino only as to Count I and his motion will be denied as to Counts II and III. Partial summary judgment will be granted in favor of CCC as to Count II, and its motion denied as to Counts I and III.

### Standards for Summary Judgment

Summary judgment motions are governed by Fed.R.Civ.P. 56(c) which has been made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is granted to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

The moving party in a motion for summary judgment has the initial burden of demonstrating that there are no genuine issues of material fact and that judgment in its favor should be granted as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The party opposing the motion may not rest upon mere allegations or denials in its pleadings. Rather, its response must set forth in required filings specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. The court should draw all inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Still, a dispute of a material fact will only prevent summary judgment if the disputed fact is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Moreover, partial summary judgment is available where it disposes of at least one count of a complaint. *Commonwealth Ins. Co. of New York v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir.1959); *Quintana v. Byrd*, 669 F.Supp. 849, 850 (N.D.Ill.1987).

Although both parties argue for summary judgment, that does not by itself indicate that there are no genuine issues of material fact. The court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987). *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2720 (2d ed. 1983 & Supp.1987). Indeed, both motions should be denied if both parties fail to meet their burden. *Id.*

### Undisputed and Contested Facts

Pursuant to Local Bankruptcy Rule 402.M[1] in this District, a party moving for summary judgment must file a statement of material facts as to which the moving party contends there is no genuine issue ("402.M Statement"). Local Bankr.R. 402.M. The Local Rules dictate the form and format of the statement; these rules are to be complied with strictly. *See, e.g., In re Bryson*, 187 B.R. 939 (Bankr.N.D.Ill.1995) (Schmetterer, J.) and collected cases cited, including *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir.1994).

Once the moving party has filed the 402.M Statement, the opposing party must file a response in a similar format by virtue of Local Rule 402.N ("402.N Statement"). Not only must the opposing party file a response, but the opposing party must set forth any additional facts which would require denial of summary judgment. Local Bankr.R. 402.N. If a party fails to comply with the rules, the material facts from the 402.M Statement will be deemed admitted. *Id.*

Marino filed his Motion for Summary Judgment, his Statement of Material Facts as to Which There Is No Genuine Dispute, an affidavit, and a Memorandum of Law in Support of Debtor's Motion for Summary Judgment. CCC filed a Response (Amended) to Debtor's Statement of Material Facts, a Statement of Additional Facts, an affidavit, and a Memorandum of Law. Marino filed a Memorandum of Law in reply to CCC's response to Marino's summary judgment motion. However, Marino did not file a response to CCC's Statement of Additional Facts as required by Local Rule. Thus, pursuant to Local Rule 402.M, the material facts set forth in CCC's Statement of Additional Facts may constitute admitted and undisputed facts for purposes of passing on the instant cross-motions.

Also, CCC filed its Motion for Summary Judgment, its Statement of Uncontested Facts, an affidavit and a Brief in Support of its Motion. Marino filed a Response and Memorandum of Law in Opposition to CCC's

---

1. "Rules 12 M and 12 N of the Rules of the United States District Court for the Northern District of Illinois are virtually identical to Local Rules 402.M and 402.N of the Bankruptcy Rules of the United States District Court and the United States Bankruptcy Court for the Northern District of Illinois. Accordingly, precedent interpreting the District Court Rules is relevant to the Local Bankruptcy Rules." *In re Bryson*, 187 B.R. 939, 944 n. 4 (Bankr.N.D.Ill.1995) (Schmetterer, J.).

summary judgment motion; however, Marino failed to file a 402.N Statement as required by the Local Rules. Thus, the factual assertions contained within CCC's Statement of Material Facts may constitute admitted and undisputed facts for purposes of deciding the present motions.

As noted earlier, each cross-motion for summary judgment must be considered on its own merits.

### a. Facts Without Substantial Controversy

Pursuant to Fed.R.Civ.P. 56(d), made applicable to these proceedings under Fed.R.Bankr.P. 7056, where sufficient disputed material facts remain such that an award of summary judgment would be inappropriate, following a hearing the Court may designate undisputed facts as established for trial. The following facts as to which no substantial controversy exists were gleaned from Marino's 402.M Statement, CCC's 402.N Statement, and CCC's Statement of Additional Facts and will be considered following such a hearing under Rule 56(d) as to whether they shall be deemed established for trial:

1. Herman J. Marino is the Debtor in this bankruptcy case. CCC 402.M ¶ 2.

2. Debtor has been, at all times relevant hereto, a resident of the State of Illinois, County of Lake. Marino 402.M ¶ 3; 402.N ¶ 3.

3. On October 20, 1995, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Marino 402.M ¶ 4; 402.N ¶ 4; CCC 402.M ¶ 14.

4. Chrysler Credit Corporation is a Delaware Corporation having its principal place of business in the State of Michigan. Marino 402.M ¶ 2; 402.N ¶ 2.

5. The Claims Register for Case 95 B 22465 maintained by the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, reflects CCC as having filed a secured claim in the amount of $459,829.58, listed as claim number 00001, and having another claim in the amount of $468,759.58 listed as claim number 00013. Marino 402.M ¶ 5; 402.N ¶ 5; Claim Register.

6. CCC's secured claim is based on judgment entered in the United States District Court for this District in case number 94 C 309, 1994 WL 478606, in the amount of $459,829.58. CCC 402.M ¶ 3.

7. Claim number 000013 is in the amount scheduled by Debtor in schedule D attached to his petition filed on October 20, 1995, and recorded by the Bankruptcy Court Clerk as claim number 00013 on the Claim Register for the Debtor's bankruptcy. No such claim was actually filed on a claim form by anyone. Marino 402.M ¶ 6; 402.N ¶ 6; Petition Schedule D.[2]

8. Claim number 00001 is in the amount asserted in CCC's proof of claim filed by it on January 24, 1996. This claim was in the amount of $459,829.58 plus interest, and asserts to be secured by real estate, stock certificates, and other property. Marino 402.M ¶ 7; 402.N ¶ 7; CCC 402.M ¶ 15.

9. Attached to and made part of CCC's Proof of Claim number 00001 are the following:

 a. Copy of corrected Judgment In a Civil Case;

 b. Citation To Discover Assets issued December 22, 1994 and served on Chicago Title & Trust Company on December 23, 1994;

 c. Citation To Discover Assets issued December 29, 1994 and served on Marino on January 1, 1995. Marino 402.M ¶ 9; 402.N ¶ 9; CCC Proof of Claim.[3]

10. On January 18, 1994, CCC filed suit against Debtor and others in United States District Court, Northern District of Illinois, Eastern Division, case number 94 C 309, 1994 WL 478606. Marino 402.M ¶ 10; 402.N ¶ 10.

2. Debtor, in his 402.M Statement, states that claim number 00013 is in the amount scheduled by him in Schedule F attached to his Petition. CCC, in its 402.N Statement and Debtor's Petition, show that this claim is actually listed on Schedule D.

3. Debtor's 402.M Statement states that the Citation to Discover Assets issued December 29, 1994, was served on the Debtor on January 5, 1995. CCC, in its 402.N Statement and CCC's Proof of Claim show that this citation was actually served on January 1, 1995.

11. On August 31, 1994, District Court Judge Leinenweber signed a memorandum opinion and order which was docketed on September 1, 1994, by the Clerk of the District Court, granting summary judgment in favor of CCC and against Debtor and all defendants and granting CCC's motion to dismiss Marino's Counterclaim. Marino 402.M ¶ 12; 402.N ¶ 12; Sept. 1, 1994, Judgment in a Civil Case.

12. On September 9, 1994, a corrected judgment in the amount of $459,829.58 was signed in the same case 94 C 309 in favor of CCC and against all defendants, and was entered by the Clerk on the docket on September 13, 1994. Marino 402.M ¶ 13; 402.N ¶ 13; Sept. 13, 1994, Judgment in a Civil Case.

13. The corrected judgment was recorded with the Recorder of Lake County, Illinois on September 16, 1994. CCC 402.M ¶ 4.

14. On the date of the corrected Judgment and as of December 23, 1994, Marino owned the beneficial interest in Chicago Title and Trust Company, Trust Number 1089366, pursuant to trust agreement dated March 2, 1987 (the "Trust"), which holds legal and equitable title to real property constituting Debtor's principal residence, commonly known as 1410 Old Mill Road, Lake Forest, Lake County, Illinois (the "Principal Residence"). Marino 402.M ¶¶ 14, 35; 402.N ¶¶ 14, 35; CCC 402.M ¶ 5.

15. On December 22, 1994, the Clerk of the District Court issued a third party Citation To Discover Assets (the "CTT Citation") upon Chicago Title and Trust Company ("CTT") which was signed by Maurice J. McCarthy as attorney for CCC. Marino 402.M ¶ 15; 402.N ¶ 15.

16. Upon CCC's request and by written order of Court, Judge Leinenweber extended the citations on July 6, 1995, Octo-

ber 4, 1995, and January 8, 1996. CCC 402.M ¶ 13.

17. On December 23, 1994, CCC served the Citation to Discover Assets upon CTT, calling for its representative to appear for testimony on January 6, 1995. Pursuant to 735 ILCS 5/2–1402(b), a copy of the CTT Citation was mailed to Marino on December 28, 1994, the third business day after service upon CTT. CCC 402.M ¶ 6. On December 28, that mailing was effected by Maurice McCarthy who mailed the CTT Citation to Marino along with other citations not pertinent here. Certificate of Service.

18. The "Certificate of Attorney" on the CTT Citation is signed by Maurice J. McCarthy and stated that judgment was entered on September 13, 1994, referring to the corrected judgment. The Certificate did not reference to the original judgment docketed September 1, 1994. Marino 402.M ¶ 16; 402.N ¶ 16.[4]

19. The CTT Citation was served on CTT by Jerry Brown, whose affidavit of service is attached to the CTT Citation and reflects service on CTT on December 23, 1994. Marino 402.M ¶ 17; 402.N ¶ 17.

20. However, the affidavit of Jerry Brown did not state that a copy of the CTT Citation was mailed or otherwise served upon the Debtor by him, and Jerry Brown was not the one who mailed or otherwise served the Citation upon the Debtor. Marino 402.M ¶ 18; 402.N ¶ 18.

21. On December 29, 1994, the Debtor sent correspondence *via* facsimile transmission to CCC's attorney, Maurice J. McCarthy, asserting that Debtor was aware of service of three citations, including the CTT citation, but had not received copies of the citations and requesting copies of the citations. Marino 402.M ¶ 22; Ex. A, Debtor's Affidavit.[5] Debtor had not

---

4. CCC only disputes this paragraph to the extent that Marino's 402.M Statement alleged that the Certificate of Attorney "incorrectly" lists the Judgment as being entered on September 13, 1994. The remainder of the paragraph is admitted.

5. CCC, in its 402.N Statement, states that the document "speaks for itself." That response,

however, does not comply with the requirements of Local Bankruptcy Rule 402.N. Moreover, until some document breaks its silence and actually gives voice, litigants must either admit or dispute statements of material fact. *See, e.g., Kempka v. Dun & Bradstreet Corp.,* 1996 WL 19577 (N.D.Ill. 1996).

by that date yet received copies of the citations mailed to him the day before by Mr. McCarthy. (See ¶ 17 above.)

22. On December 30, 1994, the Debtor received McCarthy's correspondence dated the same day with an attached "Certificate of Service" by McCarthy dated December 28, 1994, and date stamped as filed with the District Court on December 29, 1994. Marino 402.M ¶ 23; 402.N ¶ 23.[6]

23. McCarthy's December 30, 1994, correspondence to Debtor did not include another copy of the CTT Citation, Marino 402.M ¶ 24; 402.N ¶ 24, which McCarthy had earlier mailed on December 28.

24. On December 29, 1994, the Clerk of the District Court issued a Citation to Discover Assets ("the Marino Citation") addressed to Marino. CCC served the Marino Citation on Marino on January 1, 1995, calling for his appearance to testify on January 11, 1995. CCC 402.M ¶ 12; Marino Citation.

25. On the date of the original and corrected Judgment and on January 1, 1995, Marino owned and was in possession of certain outstanding stock certificates issued by Anthony Dodge, an Illinois corporation. The Anthony Dodge stock was in addition to other non-exempt personal assets of which Marino possessed. CCC 402.M ¶ 11.

26. On January 3, 1995, the Debtor sent correspondence to McCarthy asserting that on January 1, 1995, Brown served the Debtor with copies of the citations including the CTT Citation. Marino 402.M ¶ 30; 402.N ¶ 30; Ex. D, Debtor's Affidavit.[7]

27. On January 3, 1995, the Debtor received McCarthy's correspondence acknowledging that "Mr. Brown did not serve Debtor with a copy of the CTT Citation" and further stating that ... "there is no requirement to obtain personal service on you or your wife of citations directed to other persons." Marino 402.M ¶ 31; 402.N ¶ 31.[8]

28. McCarthy's January 3, 1995, correspondence stated that copies of the citations, including the CTT Citation, were mailed to Marino. Marino 402.M ¶ 32; 402.N ¶ 32; Ex. E, Debtor's Affidavit.[9]

29. Marino did not receive from McCarthy on or before January 4, 1995, the items McCarthy had mailed to Marino on December 28, namely (i) a "Certificate of Service" dated December 28, 1994, and signed by McCarthy, and (ii) a copy of the CTT Citation. Marino 402.M ¶ 33; 402.N ¶ 33; Debtor's Affidavit.

30. On January 6, 1995, Marino filed a Motion to Quash Discovery Citation or For Alternative Relief in Case No. 94 C 309, 1994 WL 478606. 402.N(3)(b) ¶ 1.[10]

31. Judge Leinenweber conducted a hearing on the Motion to Quash on January 9, 1995. 402.N(3)(b) ¶ 2.

32. On January 9, 1995, in open Court, Marino stated that the basis of the motion to quash was that he was not receiving

---

**6.** CCC states that it lacks sufficient knowledge and information to respond. However, paragraph 4 of Debtor's affidavit states that he received the letter on December 30, 1994. Moreover, a copy of this letter is attached to the affidavit at Exhibit B.

**7.** CCC, in its 402.N Statement, again states that the document "speaks for itself." Thus, this paragraph is deemed an undisputed fact. *See supra,* n. 5.

**8.** In its 402.N Statement, CCC avers that it lacks sufficient knowledge to respond to this paragraph. However, in the same paragraph, CCC states that "on January 3, 1995, McCarthy sent a letter via facsimile to Marino stating that 'Mr. Brown ... did not serve upon you copies of citations directed to Chicago Title and Trust ...'" and that "'[t]here is no requirement to obtain personal service on you and your wife, of

citations directed to other persons.'" Thus, paragraph 31 of Debtor's 402.M Statement is deemed an undisputed fact.

**9.** Marino alleges as an undisputed fact that this letter makes no claim that McCarthy or Brown mailed Debtor a copy of the CTT Citation. CCC replies that the letter speaks for itself. Upon examination, the letter expressly stated that a copy of the CTT Citation had been mailed.

**10.** As earlier stated, CCC filed a Statement of Additional Facts pursuant to Local Rule 402.N. Marino failed to respond to these allegations as prescribed by the rule. Thus, the allegations set forth in CCC's Statement of Additional Facts ("402.N(3)(b)") are deemed admitted and undisputed facts.

copies of the citations that CCC was serving. 402.N(3)(b) ¶ 3.

33. However, on January 9, 1995, in open Court, Marino was prepared to withdraw his motion to quash if he received copies of citations issued in Case No. 94 C 309, 1994 WL 478606. The copies were then handed over in open court, and the District Judge then denied the motion to quash. Tr. at 3. 402.N(3)(b) ¶ 6.

34. Moreover, on January 9, 1995, McCarthy delivered to Marino in open Court additional copies of, *inter alia*, the CTT Citation to Discover Assets and Certificate of Service therefor, and read into the record the titles of all delivered documents. 402.N(3)(b) ¶ 5.[11]

35. On October 4, 1995, District Court Judge Leinenweber, in case number 94 C 309, 1994 WL 478606, enforced the citation by entering an order which, among other things provided for delivery by Debtor of certain corporate common stock owned by Debtor (the "Anthony Dodge Stock") to the Sheriff of Lake County for levy sale, ordered the issuance and delivery of a deed to the Debtor's Principal Residence to McCarthy for recordation, and ordered McCarthy to proceed to have the Sheriff of Lake County levy and sell the property (the "Order"). This order was docketed on October 5, 1995. Marino 402.M ¶ 36; 402.N ¶ 36; CCC 402.M ¶ 7; October 5, 1995 Order.[12]

36. That order was entered within 90 days before the date of filing of Debtor's Chapter 11 petition (being entered October 4, sixteen days before the bankruptcy filing on October 20). 402.M ¶ 38; 402.N ¶ 38.

37. By Order entered on February 21, 1996, this Court granted CCC relief from the automatic stay as to Marino's beneficial ownership in the trust, thus permitting CCC to proceed against that interest. CCC 402.M ¶ 8.

38. By Order dated April 17, 1996, Judge Leinenweber in the District Court case again ordered that the deed to the Principal Residence be delivered to the attorney for CCC, and directed the attorney for CCC to obtain a writ of execution, to have the Sheriff of Lake County levy upon the Principal Residence, sell it, and apply the proceeds to the Judgment. CCC 402.M ¶ 9.

39. Pursuant to the April 17 Order, CCC received and recorded the deed to Marino's principal residence. CCC 402.M ¶ 10.

#### b. Disputed Facts

The only disputed issue concerning the instant motion for summary judgment that prevents a ruling herein is the following: Whether the Order enabled CCC to receive more than it would receive if the case were a case under Chapter 7 and the transfer had not been made. Marino 402.M ¶ 40; 402.N ¶ 40.

### *DISCUSSION*

#### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B), (F), and (K).

#### Count I: Duplicative Claim

■ CCC filed proof of claim on January 24, 1996, for a secured claim arising out of the September 9, 1994, corrected judgment in the amount of $459,829.58 plus interest. This was given claim number 00001. In addition, Marino, on its schedule D, attached to the Debtor's petition filed on October 20, 1995, scheduled a claim on CCC's behalf also arising out of the September 9, 1994, judg-

---

11. Marino alleges that he never received service of the CTT Citation. Marino 402.M ¶¶ 19, 27. However, in open court on January 9, 1995, McCarthy personally served Marino with copies of all the certificates of service and all the citation notices. Tr., Jan. 9, 1995, Proceeding.

12. CCC disputes this fact stating that the Order was entered October 5, 1995. The Order itself shows that it was signed by Judge Leinenweber on October 4, 1995, but docketed by the Clerk on October 5, 1995. There is no material dispute of fact.

ment in the amount of $468,759.58, and the Bankruptcy Court gave this claim number 00013. Debtor contends that the two claims are duplicative. CCC asserts that claim number 00001, actually filed by it, reflects the actual amount claimed due and owing to CCC before computation of interest, which it also claims therein. The Debtor has requested an order striking claim number 00013.

Fed.R.Bankr.P. 3003(c)(4) states that a "proof of claim or interest executed and filed in accordance with this subsection shall supersede any scheduling of that claim or interest pursuant to § 521(1) of the Code." Fed. R.Bankr.P. 3003. Although CCC does not admit that claim number 00001 is duplicative of claim 00013, it does admit that claim number 00001 reflects the actual amount due and owing. There is no material factual dispute as to whether 00001 and 00013 reflect the same claim; indeed, they both reflect the same judgment. One claim was scheduled by Debtor on CCC's behalf, the other was filed by CCC on its own behalf. Thus, pursuant to Fed.R.Bankr.P. 3003, claim number 00001 supersedes claim number 00013. For reasons state above, Marino's Motion for Summary Judgment as to Count I of Marino's Adversary Complaint will be allowed and CCC's Cross–Motion for Summary Judgment as to Count I of Marino's Adversary Complaint will be denied.

### Count II: Extent, Validity and Priority of Liens

Under Illinois law which applies here, a lien which arises as a result of service of a citation to discover assets is a judicial lien on all personal property of the judgment debtor which is held by the citation recipient at the time of service. 735 ILCS 5/2–1402. Prior to 1993, when the Illinois Code of Civil Procedure was amended, Illinois and federal courts were divided over whether service of the citation created a lien. The law at the time was aptly described as "muddled." *General Telephone Co. of Illinois v. Robinson*, 545 F.Supp. 788, 797 (C.D.Ill.1982). However, most Illinois courts as well as the bankruptcy judges in the Northern District of Illinois generally ruled under Illinois law that service of citation summons created a lien while it also required the discovered

assets to be used toward satisfaction of the judgment. *In re Lifchitz*, 131 B.R. 827, 833 (Bankr.N.D.Ill.1991) (Schmetterer, J.); *In re T.M. Sweeney & Sons, LTL Services, Inc.*, 120 B.R. 101, 105 (Bankr.N.D.Ill.1990) (Schmetterer, J.); *In re Fowler*, 90 B.R. 375, 377 (Bankr.N.D.Ill.1988) (Coar, J.); *In re Einoder*, 55 B.R. 319, 325 (Bankr.N.D.Ill. 1985) (Ginsberg, J.); *In re Gus Hormovitis and George Karahalios*, 57 B.R. 471, 475 (Bankr.N.D.Ill.1985) (Schwartz, J.); *In re Foluke*, 38 B.R. 298, 300 (Bankr.N.D.Ill.1984) (Hertz, J.); *In re Lapiana*, 31 B.R. 738, 742 (Bankr.N.D.Ill.1983) (Fisher, J.), *aff'd on other grounds*, 909 F.2d 221 (7th Cir.1990); *In re Coan*, 96 B.R. 828, 830 (Bankr.N.D.Ill. 1989) (Sonderby, J.). *But see In re Jaffe*, 111 B.R. 701, 704 (Bankr.N.D.Ill.1990) (Barliant, J.) (service of a citation merely serves to discover, not attach, the assets).

However, since those cases were decided, the Illinois legislature amended the statute to end any possible dispute. The statute, as amended, expressly provides that service of the citation lien creates a lien on the property and that "[t]he judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this section." 735 ILCS 5/2–1402(m). Subsection (a) of that provision provides that a "supplementary proceeding shall be commenced by the service of a citation issued by the clerk." *Id.* Further, a citation to discover assets "creates a lien on the assets in possession of the party served, whether it be the debtor or a third party." 735 ILCS 5/2–1402. The lien is effective until terminated by order of the court, motion of the creditor, or satisfaction of the judgment. However, the lien automatically terminates six months from the date of the citation respondent's first personal appearance, unless it is extended by the court. ILCS S.Ct.R. 277.

The first step in the citation process is for the court to issue a citation to the debtor or a third party notifying that party of the proceeding and directing the respondent to appear. Once non-exempted income and assets are discovered, the court may fashion a remedy ordering the debtor to satisfy the debt. *Appeal of Swartz*, 18 F.3d 413, 416 (7th

Cir.1994) (*citing* 735 ILCS 5/2–1402(a)). The order for turnover of property was the remedy against Marino in the District Court case.

As stated above, the citation lien becomes effective upon service of the citation issued by the clerk. As the undisputed facts show (¶¶ 17 and 24), the CTT Citation was served on CTT on December 23, 1994, and the Marino Citation was served upon Marino on January 1, 1995.

However, Debtor, in his Motion for Summary Judgment, argues that CCC has no judgment lien because the CTT Citation was not served properly. First, Debtor argues that the Certificate of Attorney was defective. Second, Debtor argues that, because he never received a mailed copy of the CTT Citation, service of the citation was ineffective to create a lien. Finally, Debtor contends that the citation liens terminated by operation of law.

### (a) *No Defect in the Attorney's Certificate.*

■ Marino argues that defects in the Certificate of Attorney attached to each citation prevented the creation of the citation lien. Any citation served must include a certification by the attorney setting forth "the amount of the judgment, the date of the judgment, or its revival date, the balance due thereon, the name of the court, and the number of the case, and a copy of the citation notice required by this subsection." 735 ILCS 5/2–1402(b). Marino points out that the certificate of attorney refers to a judgment in the amount of $459,829.58 entered on September 13, 1994, although no judgment was actually signed on September 13, 1994. The original judgment in favor of CCC was signed by Judge Leinenweber on August 31, 1994, and docketed and entered by the clerk on September 1, 1994. A correcting judgment in the amount of $459,829.58 was signed by the same judge on September 9, 1994, and docketed and entered on September 13, 1994. CCC argues from these facts that the reference to a September 13 judgment was correct.

The original judgment merely granted CCC's motion to dismiss Marino's counterclaim and denied Marino's motion for summary judgment. It did not award any dollar recovery. CCC's use of the correcting judgment on its Certificate of Attorney was appropriate. The correcting judgment awarded CCC the amount of $459,829.58.

Marino contends that the judgment date specified should have been August 31, 1994, but that position is incorrect. The date of entry of the correcting judgment on the docket was the appropriate date to use in the Certificate of Attorney.

■ Moreover, the correct effective date of the amended judgment was September 13, 1994, the date it was docketed. Fed.R.Civ.P. 58, applicable to District Court proceedings provides that the date of the entry of judgment is the date the clerk "... enter[s] the judgment" unless the court orders otherwise. Rule 58 requires two specific acts to occur before a federal court judgment is considered effective. 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure Civil* 2d § 2781. First, the judgment must be set forth on a separate document, and, second, it must be entered on the docket as provided in Fed.R.Civ.P. 79(a). As the undisputed facts show, the Clerk of the District Court entered the amended judgment on the docket on September 13, 1994. Thus, the effective date of the judgment was September 13, 1994, and the Certificate of Attorney reflected the correct judgment date.

### (b) *Was the Issue as to Proper Service of the Citation Determined or Waived in the District Court?*

Marino argues CCC failed to send him a copy of the CTT Citation as required by 735 ILCS 5/2–1402(b). CCC argues that Marino's arguments were decided by the District Judge and were waived by him before that Judge. In effect, Marino wants this Court to go behind the District Judge's denial of his motion to quash and subsequent turnover order and rule that the orders of that Judge were erroneous. This represents a collateral attack on orders of the District Judge that were not appealed.

■ CCC first contends that Marino waived service of the citation in open court

on January 9, 1995, in connection with proceedings on Marino's motion to quash the citations. However, Marino did not waive service during those proceedings. "Waiver is 'an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed.'" *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1275 (7th Cir.1996), *reh'g* denied (1996) (*quoting Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir.1991)). CCC cites to the transcript from the January 9, 1995, proceeding as support for Marino's alleged waiver of service, but does not cite to a specific portion of the transcript for the waiver. But no unequivocal and express waiver was found or specified within the transcript of the proceedings. Debtor stated, "I sent Mr. McCarthy a FAX letter last week telling him that I would waive service of process *if necessary* so I could get those copies." Tr. at p. 2, lines 14–16 (emphasis added). Later in the proceeding, McCarthy gave Marino copies of the citation documents. Marino's statement was not an intentional abandonment or relinquishment of a known right. Debtor merely said vaguely that, "if necessary," he would waive service. Thus, Marino made no clear waiver which would bar his argument here.

 Alternatively, CCC argues that the issue was decided by the District Judge. There are three requirements for applying the preclusive effect of *res judicata:* identity of parties, identity of the cause of action, and a final judgment on the merits. *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 614 (7th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 915, 133 L.Ed.2d 846 (1996). *Res judicata* bars not only matters determined in a prior suit, but matters which could have been determined in that suit but were not raised. The doctrine does not bar litigation of an issue where a party did not have a full and fair opportunity to litigate the issue in the original case. Moreover, the party invoking *res judicata* bears the burden of proving applicability. *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir.1996) (citations omitted). CCC argues that denial by the District Judge of the motion to quash bars Debtor

from raising the issue of propriety of service. However, the motion to quash was not itself a final judgment on the merits. Thus, *res judicata* does not apply to that decision.

 Likewise, collateral estoppel or issue preclusion does not apply. Collateral estoppel requires that the issue be actually litigated and determined in the prior proceeding. *Sterling v. United States*, 85 F.3d 1225, 1228 (7th Cir.1996). The propriety of service of the citations was never argued. Thus, collateral estoppel does not apply.

 *Res judicata*, however, does apply to the turnover orders. The turnover orders were final orders as to property covered by the CTT Citation and Marino Citation. It was thereby ordered that CTT issue a deed for the trust property which was to be delivered to McCarthy, and further directed that the Lake County Sheriff levy on and sell the trust property. It was also ordered that Marino turn over his Anthony Dodge stock. A judgment is final for purposes of *res judicata* if it terminates litigation on the merits so that the only issue remaining is proceeding with its execution. *In re Dalip*, 194 B.R. 597, 604 (Bankr.N.D.Ill.1996) (*citing Catlett v. Novak*, 116 Ill.2d 63, 68, 106 Ill.Dec. 786, 506 N.E.2d 586 (1987)). In other words, the judgment should conclusively dispose of the issues before the rendering court. *New Haven Inclusion Cases*, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970). The turnover orders were final orders that disposed of all the remaining issues concerning the CTT Citation and the Marino Citation as well as ownership of property covered by these orders.

 An identity of parties simply means that the prior and later proceedings involve the same parties in substantially the same capacity. CCC and Marino were parties to the turnover proceeding. Identity of causes of action means that the causes of action were actually raised in the earlier proceeding or should have been raised in the earlier proceeding. Marino could have argued improper service of the Citation during the turnover proceeding which was held under Illinois law. Under 735 ILCS 5/2–

**246**

1402(c), a court is to enter an order as to non-exempt assets of a judgment debtor affected by service of the citation. Section 5/2–1402(d) provides that no such levy and sale order shall be entered unless "there appears of record a certification of mailing showing that a copy of the citation and a copy of the citation notice was mailed to the judgment debtor as required by [this statute]." 735 ILCS § 5/2–1402(c). CCC filed this certificate with the District Court on December 29, 1994. CCC ex. E. An order based upon 1402(c) depends on proper service of a citation and proper service and mailing in the case of a third-party citation. If service and mailing of the CTT Citation was improper, the turnover hearing was the appropriate forum in which to raise that issue. Marino cannot challenge turnover at this late date and in this proceeding just because he failed to do so at that time. Thus, Marino is precluded from arguing that service of the citation was improper; all issues as to validity of service were foreclosed by *res judicata* upon entry of the turnover orders.

**(c) *Citation Service Was Proper***

■ Even if Marino were permitted to argue here that the service of the citation was improper, his argument would still fail. Marino argues service was improper and, thus, ineffective to impose a citation lien because the process server failed within three business days after service of the CTT Citation to mail the citation to Marino. Marino argues that the Citation was never mailed to him; rather, he received a copy of the Citation in open court on January 9, 1995. CCC argues that on December 28, 1994, the third business day after service on CTT, a copy of the Citation lien was sent to Marino.[13] It is undisputed that Marino received in-hand service of the CTT Citation on January 9, 1995. Facts Without Substantial Controversy ¶ 24. It is likewise undisputed that CCC mailed Marino a copy of the citation within three business days of service on CTT.

The statute provides:

Whenever a citation *is served* upon a person or party other than the judgment debtor, the officer or person serving the citation *shall send* to the judgment debtor, within three business days of the service upon the cited party, a copy of the citation and the citation notice, which may be sent by regular first-class mail to the judgment debtor's last known address.

735 ILCS 5/2–1402(b) (emphasis added). As previously stated, the statute provides that a citation lien is created upon service of the citation as dictated by subsection (a). 735 ILCS 5/2–1402(m). There is no mention of subsection (b), which imposes this additional mailing requirement for third-party citations.

■ This mailing requirement is not part of the service requirement. The statute states that, after *service* of a third-party citation, the citation must also be *sent* to the judgment debtor. If formal service was required, the statute would have specified as such. The mailing requirement is an additional requirement designed to ensure that the judgment debtor receives notice of third-party citation proceedings. The statute specifically states that no citation hearing shall be held "sooner than five business days after the mailing of the citation and citation notice to the judgment debtor, except by agreement of the parties." 735 ILCS 5/2–1402(b). Failure to comply with the mailing requirement

---

**13.** CCC also argues that service of the CTT Citation was not necessary because service of the Marino Citation was sufficient to create a citation lien on all of Marino's non-exempt assets, including those covered by the CTT Citation. However, service of a citation lien only attaches to the assets which are in possession of the citation respondent. *Appeal of Swartz,* 18 F.3d 413, 416 (7th Cir.1994). Service of the Marino Citation on Marino as a beneficial owner of the land trust as to his house was insufficient by itself to create a lien on the beneficial interest of the Trust. Service of a citation against a trustee

creates a lien against the beneficial interest of a trust. *In re Barone,* 184 B.R. 747, 749 (N.D.Ill. 1995) (collecting cases). Although the beneficiary of a trust retains certain limited powers, "the trustee of a standard land trust retains sufficient control over the beneficial interest to direct its sale or transfer upon an order of the Court." *Id.* Thus, the beneficial interest of a land trust is in the "possession" of the trustee. In order for a citation lien to attach to this interest, the creditor must issue the citation to discover assets on the land trust pursuant to 735 ILCS 5/2–1402. *Hormovitis and Karahalios,* 57 B.R. at 475 (collecting cases).

does not interfere with the creation of the lien. Rather, it prevents a court from entering an order regarding disposition of the property covered by the third-party citation. As previously stated, the statute bars the entry of an order disposing of the property unless a certificate of mailing appears of record. 735 ILCS 5/2–1402(d).

 Indeed, the service requirement itself is designed for the purposes of notice and due process. *Manley Motor Sales Co. v. Kennedy,* 95 Ill.App.3d 199, 50 Ill.Dec. 679, 682, 419 N.E.2d 947, 950 (1981). Although due process generally requires compliance with the rules, "where the rules are inadequate, substantive due process requires only actual notice....'" *Id.; Martin v. C.D. Gray, Inc.,* 110 F.R.D. 398,· 401 (N.D.Ill. 1986). Debtor admits and the undisputed facts show that he had actual notice of the CTT Citation on or before December 29, 1994. Facts Without Substantial Controversy ¶ 21. Moreover, Debtor received a copy of the citation on or before January 9, 1995, well in advance of the turnover proceeding. Facts Without Substantial Controversy ¶ 33.

 Finally, the statute states that within three business days of service of the citation, the server *shall send* a copy to the judgment debtor. There is no date requirement for receipt. "In Illinois, the affidavit of service is *prima facie* evidence that process was properly served." *Paul v. Ware,* 258 Ill.App.3d 614, 196 Ill.Dec. 790, 792, 630 N.E.2d 955, 957 (1994) (*citing In re Jafree,* 444 N.E.2d 143, 146 (Ill.1982)). McCarthy's certificate of service stating that copies of the CTT Citation and citation notice were mailed on December 28, 1994, was filed with the District Court on December 29, 1994. Marino denies receiving the mailed copies, but CCC has established as an undisputed fact that they were mailed in compliance with the statute. Service and mailing of the citation was proper. Debtor received a copy of the citation more than nine months prior to the turnover hearing.

### (d) *The Citation Lien Did Not Terminate by Operation of Law*

Debtor also argues that the citation liens automatically terminated six months after the respondents' (Debtor and CTT) first personal appearance pursuant to the citation. As previously stated, unless the judgment is satisfied or the court orders otherwise, a citation lien automatically terminates by operation of law six months from the date of the citation respondent's first personal appearance. 735 ILCS § 5/2–1402(m)(2); ILCS S.Ct. Rule 277. However, it is undisputed that the District Court extended the citations on July 6, 1995, October 4, 1995, and January 8, 1996. The CTT citation called for its appearance on January 6, 1995. The Marino citation called for his appearance on January 11, 1995. Debtor has offered no undisputed facts to establish that the first personal appearance of either respondent actually took place earlier than those dates. Therefore, CCC has established that the first extension was granted on July 6, 1995, within the six month period beginning January 6, 1995.

### *Conclusion as to Count II*

Pursuant to section 5/2–1402, a lien is created upon service of the citation. It is undisputed that the CTT citation was served on CTT on December 23, 1994, and the Marino citation was served on him on January 1, 1995. Pursuant to 5/2–1402(m)(2), on those respective dates citation liens were imposed by law upon all personal property belonging to Marino in the possession or control of CTT and Marino. Those liens did not expire by operation of law.

Accordingly, summary judgment will be denied as to Marino on Count II of the Adversary Complaint, but summary judgment on that Count will be allowed in favor of CCC.

### Count III: 11 U.S.C. 547

Section 547 of the Bankruptcy Code establishes requirements for avoiding preferential transfers. 11 U.S.C. § 547. Under subsection (b), a trustee may avoid any transfer of the debtor that was made (1) for the benefit of a creditor; (2) on account of an antecedent debt; (3) while the debtor was insolvent; (4) on or within 90 days before the filing of the petition (a year when insiders are transferees); (5) where such transfer allowed the

creditor to receive a greater percentage of the debtor's estate than it would have received had the transfer not taken place and had the debtor's assets been liquidated and distributed in a Chapter 7 case. 11 U.S.C. § 547(b). The first and second elements of § 547(b) are not contested here. However, the remaining elements are in dispute.

Marino alleged in his Statement of Material Facts that the Order transferring the Debtor's interest in property was made while the Debtor was insolvent. Marino fails to cite to any supporting materials as proof of this statement, and CCC disputes the allegation, also without supporting materials.

However, § 547(f) provides that a debtor is presumed to have been insolvent on and during the 90 days immediately preceding the filing of the petition. 11 U.S.C. § 547(f). This presumption of insolvency is not conclusive and may be rebutted by evidence presented by the transferee. *Matter of Taxman Clothing Co., Inc.,* 905 F.2d 166, 168 (7th Cir.1990); *Lifchitz,* 131 B.R. at 834 (*citing In re Demetralis,* 57 B.R. 278, 281 (Bankr.N.D.Ill.1986)). CCC has failed to present any evidence to overcome the statutory presumption of insolvency. More than a mere denial of insolvency is required to overcome this presumption. *Demetralis,* 57 B.R. at 281 ("a bare allegation of the debtor's solvency at the time of the transactions ... does not constitute evidence to rebut the presumption of insolvency"). Thus, on the present record, Marino has established the third element.

There is also a dispute as to whether the transfer of property occurred within the 90–day "reach back" period. Marino filed his Chapter 11 petition on October 20, 1995. The 90–day period under § 547 began on July 21, 1995.

As previously stated, service of a Citation to Discover Assets creates a citation lien under Illinois law on Debtor's intangible assets. However, the date that a citation lien is created on Debtor's property is not necessarily the same date that a "transfer" of Debtor's property occurred. CCC contends under Illinois law that there was a "transfer" within the meaning of § 547(b) when the

CTT citation was served, and thus the transfer fell outside the 90–day period. Marino argues that no transfer occurred until Judge Leinenweber signed the turnover order on October 4, 1995, within the 90–day period.

Although the Code does provide a generalized definition of "transfer" under § 101(54) which had been held to include any judicial proceeding that fixes a lien upon property of the debtor, for purposes of § 547 the time of "transfer" of an interest is fixed by § 547(e)(2). *Global Distribution Network, Inc. v. Star Expansion Co.,* 949 F.2d 910, 911 (7th Cir.1991). Thus, the date of perfection for purposes of applying § 547 is controlled by § 547(e)(2). Perfection under § 547(e)(2)(B) is a concept under which a creditor's rights become fixed and unalienable as against the lien rights of other competing creditors. A transfer of personal or intangible property is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B).

Under Illinois law, the citation lien that attaches when a citation summons is served remains subject to attack and modification until the property is ordered to be turned over. If perfection had taken place within ten days of the creation of the lien, then, under § 547(e)(2)(B), the transfer would have been deemed to have occurred when the lien was created. However, because the citation lien was created upon service of the citation summons but was not perfected until the first turnover order entered on the docket on October 5, 1995, outside the ten-day relation-back period, the transfer is deemed to have occurred on October 5, 1995. *See T.M. Sweeney,* 120 B.R. 101, 105 (Bankr.N.D.Ill.1990) (for preference purposes, transfer occurs when judgment creditor perfected citation lien by entry of turnover order); *Lifchitz,* 131 B.R. 827; *In re Dean,* 80 B.R. 932, 934 (Bankr.C.D.Ill.1987); *see also, Fowler,* 90 B.R. 375, 379–80 (Bankr.N.D.Ill.1988). *But see Farm Credit Bank of St. Louis v. Lucas,* 152 B.R. 244 (C.D.Ill.1993), *rev'd on other grounds sub nom., Appeal of Swartz,* 18 F.3d 413 (7th Cir.1994); *In re Prior,* 176 B.R. 485, 495 (Bankr.S.D.Ill.1995). Thus, the "transfer" of property did occur during the 90–day

period upon entry of the turnover order. Marino has therefore established the fourth element required under 11 U.S.C. § 547(b).

The parties also dispute the final element of § 547(b), whether the transfer allowed CCC to receive more than it would have received if the transfer had not occurred and the assets had been liquidated and distributed as in a Chapter 7 case. Unlike the insolvency element, there is no presumption that a transfer of property in a Chapter 11 case yields a higher percentage than a liquidation under a Chapter 7. Marino contends that CCC received more than it otherwise would have in a Chapter 7 case, but failed to provide or cite to any supporting materials in the record to demonstrate this. CCC disputes Marino's allegation but does so without any reference to supporting materials. Thus, a material dispute remains as to whether the transfer is avoidable as a preference, and summary judgment for either party would be inappropriate.

Accordingly, because there are genuine issues of material fact regarding Count III of Marino's Complaint, both Marino's Motion for Summary Judgment as well as CCC's Motion for Summary Judgment will be denied as to Count III.

### CONCLUSION

For reasons set forth above, by orders to be entered, Marino's Motion for Summary Judgment will be allowed as to Count I; his motion for summary judgment will be denied as to Counts II and III. CCC's cross-motion for summary judgment will be allowed as to Count II and denied as to Counts I and III. A trial will be held on Count III pursuant to a pre-trial order to be entered. But first, a hearing will be held under Fed.R.Civ.P. 56(d) to determine whether uncontroverted facts set forth hereinabove should be deemed established for trial. *See Occidental Fire and Casualty Co. of North Carolina v. Cont'l Bank N.A.*, 918 F.2d 1312, 1320 (7th Cir. 1990); *Bryson*, 187 B.R. at 947–48 (collecting cases).